Danforth, J.
The appellants were sureties to the plaintiff for one Mooney, its agent, and the conditions on *101 which their obligation depended were, first that Mooney should perform ms contract with the plaintiff; second, that he should faithfully discharge his duties as its agent; and third, that he should pay over all moneys belonging to it in such manner as it should prescribe. The complaint contains three causes of action. The second was found by the referee to be groundless, but the first and third he reported to be proven. Concerning the first cause of action the complaint, after setting out the engagement of Mooney as agent and his agreement as to procuring and effecting insurance upon lives by policies to be issued by the plaintiff, and making collections for premiums and remitting the same to it, alleges that it was further agreed that the plaintiff should advance to the said Mooney the sum of $1,200, which was to remain a first lien upon all the business and renewal interest secured to said Mooney under the contract, until repaid by said Mooney with interest at seven per cent; that said Mooney agreed by said contract to pay said money with seven per cent interest;” that the plaintiff did accordingly advance to him moneys at various times, amounting to $1,200, which he has not paid.
The referee finds as a fact that the moneys were advanced; that the agreement between Mooney and the plaintiff “provided for the repayment to him as above stated, with interest thereon at the rate of seven per cent; and the said bonds so made, executed and delivered by the defendants to the plaintiff provided for the performance by the said defendant Mooney of the said contract;” and as conclusion of law he finds that the defendants are indebted to the plaintiff and the plaintiff is entitled to recover from defendants in this action the sum of $1,480 for and on account of the $1,200 so advanced to the defendant Mooney, with the interest thereon. It is apparent from the record that the plaintiff’s contention before the referee in furtherance of the allegation in the complaint treated the advance ■ as a loan and charged Mooney as a borrower. The complaint alleges that “Mooney agreed by the contract to pay the said money, with seven per cent interest.
The referee says “The plaintiff’s contention in this action is that the clause relating to advances of money in the contract named, provides for a loan to Mooney, to be repaid by him absolutely and unconditionally,” and by his opinion and finding adopts the plaintiff’s view of the contract. The validity of the judgment depends upon the correctness of that construction, and with it I cannot concur. In the first place there is no express agreement on the part of Mooney to pay back the money ; there is no agreement that its advance shall create an indebtedness on his part; no words signifying that he is to be a borrower, nor that the plaintiff *102 will lend to him any money; these omissions in an agreement so fully and minutely defining the duties and contract obligations of the agent and the contract rights of the company are of great significance. It would have been much more natural to insert words signifying that to be the true character of the transaction, it it was so intended, than omit them, and much easier to say directly that Mooney assumed a personal liability, if that was the fact, than words which require an extended argument on the part of counsel to satisfy a referee or court that such liability, although not expressed, may be inferred. It would have been a simple matter to have said that Mooney would repay the money if that was the agreement, and that such or similar words were not used, is one proof among others, that the parties never intended to enter into such an agreement as has, with difficulty been spelt out for them. It certainly was not omitted from an unconsciousness of the value and importance of definite and accurate statement of the terms upon which the relations of principal and agent were to be formed. Of all the many topics covered by the contract, this, the simplest, is alone left in doubt. The rest are treated with professional art and prudence. But in respect to this matter what are the words used ? It is agreed that for six months the company “ will advance to the said Mooney the sum of $200 per month,” to advance is to bring forward. Standing by itself it means nothing more than that the company will “forward” to Mooney this money; they will take it from their treasury and put it in his hands, For what purpose must be elsewhere ascertained. It may characterize a gift; it may be in anticipation of a debt to mature at a future time; it may characterize an act by which a consignee is put in funds for the management of the business of the consignor, or any transaction by which an agent through the use of money is desired to promote the business of the employer.
In other words, the use to which it is to be put will determine the nature and qualify the character of the advance. If to the use of the advancee it may be regarded as a gift or a loan according to circumstances, but if the advance is to be used in the business of the person making it, it could be regarded neither as a gift nor a loan. The person to whom it was advanced could neither hold it as his own nor could he be charged as a borrower. He could be called to account for it and made to show in what way he had complied with the directions under which he received it. Just so it is in this case. The parties leave no room for doubt on this subject. They say this sum of $200 per month advanced to the agent is to be used in advancing the interests of the company m the territory “ covered by the *103 •contract.” Thus the principal is to “advance”—i. put forward to the agent, money, and in its turn the money is to be used in uadvancing”—that is, “putting forward ” the interests of the company. The first advance is not more a loan to the agent than the last advance is a loan by the agent to the company. He is responsible to them for its use and may be called on to account for or show that it has been used for the purpose for which he received it. And for his failure to account, the sureties would be bound by the express terms of the bond. They undertake that he shall “ discharge his duties as agent,” and they undertake that he “ shall pay over all moneys belonging to the company.” Money loaned ceases to be the money of the lender and becomes the property of the borrower. If the money in question was loaned, it was not in his hands as money belonging to the company.
But the contract goes further. It is added that the amount advanced “is to remain a first lien upon all the business and renewal interest secured to the said Mooney under the contract until re-paid with interest at seven per •cent.” These circumstances are not inconsistent with the view already expressed, nor are they inconsistent or in contradiction oí the meaning attributed to the promise of the company to make the “advance.” They constitute an agreement that the advance made shall be a hen on the interest of the agent under the contract, but that involves no ■personal liability. It is an advance of money upon personal security, but not upon personal credit. A chattel mortgage declared by its terms to be void, if the mortgagor paid a sum named by the first of January (Weed v. Covill, 14 Barb., 242), or “if he shah pay” (Salisbury v. Phillips, 10 Johns., 57), or for the purpose of securing the payment of $345.70 (Culver v. Sisson, 3 N. Y., 264), permitted no imphcation of an agreement to pay or an acknowledgment of indebtedness. Nor, in this case, can the fact that the duration of the hen is provided for until the amount “is repaid,” allow a different conclusion. It is clear that it does not imply an agreement on Mooney’s part to be personally bound for its repayment. He received the money with authority to apply it to certain purposes, and if not so apapphed it might be recovered back as money received to the use of his principal.
He never held it for any other use than that of the agency and there can no habihty except under the express terms of the agreement. These have not been violated. This conclusion accords with the issue made by the pleadings. The complaint alleges that Mooney agreed by the -contract to pay the money. The answer denies it. It was not necessary to do more. A pawnbroker might as well *104 sue for money advanced upon a pledge, a banker for money advanced upon collaterals, a master for money furnished his servant to procure supplies. In neither case is a debt created nor could either recover as upon a debt for money received or advanced.
It follows that the referee erred in allowing a recovery for the money advanced in this case. Neither the allegations nor the proof made oiit a cause of action for any breach of the undertaking by which the appellants bound themselves.
The referee also allowed the plaintiff $158.50 as for moneys collected and not paid over This sum was arrived at by disallowing the defendant’s claim for commissions at-fifteen per cent on new policies issued from August 1, 1878, to May 1, 1879. The territory assigned by the plaintiff to-Mooney was at the time occupied by sub-agents theretofore appointed by the plaintiff and the defendant Mooney was required by his agreement “to carry out in good faith all contracts then in force with them.” The effect of this-provision was to put him in the place of the company so far as the terms were concerned on which those agents were employed, .and they became his agents for the future. But the same clause of' the agreement which affects this relation declares, “for the purpose of successfully developing and establishing the agency of the-company in the territory herein named an additional commission of fifteen per cent, shall be allowed the said agent on the premiums of all new policies placed and reported by himself or his agents in the said field during the first year of this contract.” It appears by the findings of the-referee that, “the amount of the premiums paid to said plaintiffs by such sub-agents referred to in said contract for insurance within the'-limits of such agency on applications, procured by such sub-agents between August 1, 1878, and May 1, 1879, was $1,554.64, and that this sum of $1,554.64- “ was premiums on new 'policies placed and reported in said agency by agents in existence at time of contract during said first year of said contract.”
The contract between the parties was, however, put attend to by Mooney on the fifteenth of April and at that time-he ceased to have any interest in the business of the company and could claim nothipg on account of policies thereafter issued. Whether there were any issues after that date or not, and if so, how many does not appear. The-referee disallowed the entire claim and found a balance due-the plaintiff. In this, also, we think he erred. For the-several errors pointed out the judgment should be reversed, the order of reference vacated and a new trial had, with costs to abide the event.
All concur, except Earl and Peckham, JJ., not voting.